We have a full courtroom. I understand we have students from West Point High School with Mr. Lane and I'm pleased to have you. I'm a little surprised about coming to watch these cases. They're going to be sort of tough. The first two cases deal with an application of a Supreme Court case which says that you receive life without parole or the death penalty. Our special case and you can't sentence a juvenile to life without parole or to a death penalty. And so the question in the first two cases is whether the states are following that law. That's a Graham decision. And I also understand we have lawyers and law clerks from the Virginia Supreme Court observing and welcome for that too. Sort of makes the federalism work, the federal-state relationship. So why don't we begin with the first case which is LeBlanc v. Mathena and Mr. Raphael, we'll hear from you. Good morning, Your Honor. May it please the Court, Stuart Raphael for Ward and Mathena. The Commonwealth appeals the district court's order granting habeas relief to Dennis LeBlanc in ordering resentencing for his 1991 rape and abduction of a 62-year-old woman. His prior convictions included carjacking, abduction, and multiple convictions for use of a firearm in the commission of a felony. He claims that he's serving a life without parole sentence in violation of Graham v. Florida. The Supreme Court of Virginia held in 2011 in Angel v. Commonwealth, however, that Virginia's geriatric parole statute provides a meaningful opportunity for release at age 60 and therefore complies with Graham. LeBlanc tries to distinguish Angel by arguing that the statistical evidence that he introduced in the trial court shows that he won't get a meaningful opportunity for release when he turns 60. The trial court held an evidentiary hearing, dismissed his claim. The federal magistrate judge recommended dismissing the federal habeas petition but the district court reversed and granted resentencing. The district court committed two errors under AEDPA that require reversal. Number one, under Section 2254 D1, the court erred in finding that the state court made an objectively unreasonable application of clearly established federal law as of the date of the state court's decision. In this case, it was not unreasonable for a state court to conclude that parole eligibility at age 60 provides a meaningful opportunity for release within the defendant's lifetime. Secondly, under Section 2254... On that point, I guess you're addressing the Graham case in the term meaningful opportunity and your basis for saying that is not clearly established, at least in terms of what it means, because the definition is not in the opinion or because the case law has not been developed on it? I think both of those are true. Graham doesn't say what parole requires and it leaves that to states in the first instance. So I think the first question for the court to decide is, is it objectively unreasonable for a state looking at Graham to think that release at age 60 using the same parole considerations that are available in traditional parole, does that satisfy Graham? And we say that it does and it wasn't unreasonable. Tell me, why would Graham use the term meaningful? If you look at, and I guess what I'm thinking ahead in this terms of this particular program, I guess we really don't know yet because there is no evidence of being able to use the program, but is there anything definitive in the law that requires the state of Virginia to consider the fact that the individual was a juvenile when they reached this particular eligibility state? Yes, Your Honor. The Supreme Court of Virginia held an angel that all of the traditional parole factors apply and the parole manuals in the record and it includes all factors relating to the defendant, including any mitigating factors, circumstances of the offense, family history, so it certainly includes it. The magistrate judge found that and of course the Supreme Court of Virginia is the ultimate authority on how to construe the Virginia statute and just recently in the Vasquez case, Justice Mims and his concurrence also said, look even if you find the statistics now troubling, that's not a claim that's going to arise until 2038 when these folks are eligible for eligibility arises and then determine whether in fact it becomes a factual question of whether in fact it's being applied in that manner or not. I think there is a ripeness issue here, but I think the court needs to unpack two things to analyze this case. The first question is the age 60 threshold question, is that does that clearly violate Graham to say you got to wait until age 60? And the second question is the factual question, do Virginia's procedures as applied actually provide that meaningful opportunity when you hit age 60? And I think it's critical to unpack those two things. Let me take the age 60 threshold question first. There's obviously a range where we'd probably be in agreement, right? If Virginia statute said you're eligible for parole at age 40 or age 50, I don't think Mr. Stevenson would be here arguing that that violates Graham. Likewise, if Virginia statute said you can't get parole until you're 90 or 100, we'd confess error. That's obviously a life without parole sentence. So there's a range in the middle, right? It's probably between 50 and 80, and the question is if a state picks an age within that range, is that reasonable? And we say it is. Graham provides no contrary guidance at all. Graham could have given us more guidance on what meaningful opportunity. Yes, it certainly could have, and of course under... But shouldn't we... I mean, I'm just thinking here, and I got your argument. It's going flowing very well in terms of your logic on it, but the problem that seems to keep popping up in my mind is this whole business of meaningful opportunity, and then all of the basis that Graham used for going in this direction. The fact that we're dealing with juveniles who have not yet matured, and then as they mature, and if there's a demonstration here, they should have an opportunity unlike adults who are presumably matured and made a more informed decision. That it should be different, and yet here we have a Virginia statute that you say may allow, I think may allow, for it to be considered. It does allow. You say that's enough, but it doesn't require it, and it doesn't use the word juvenile. None of the factors for the consideration of Graham... I don't think you can say it's explicit in this statute, but at least implicit is your... and you think that's enough. I do, especially under AEDPA, where you're required to give deference to the state court in the way it does. You've got an authoritative decision from the Supreme Court of Virginia saying the parole factors apply, and if for some reason in the future the parole board doesn't do that, if they don't... like you've got another case coming up next, Hayden, where it's apparently agreed that youth isn't taken into account, or it hurts the person. That's not Virginia's system. Youth is taken into account. It will be taken into account, and if he gets to the point where it's not, he's got a remedy then. So there really is a rightness aspect to this. Mr. Hayden, I have many questions. I don't mean to take up all the time on this, but it really is an intriguing question, intriguing issue. In Graham, it seems that one of the difficulties that the court confronted was a juvenile who had no possibility of being released, therefore no hope of being released down the road. In this instance, perhaps the impossibility is removed, but I'm not sure the degree of hope in terms of conforming one's conduct as you mature to understand, you may now, by virtue of you having achieved some degree of maturity and a better understanding of how the world works, you need to conform yourself even more so and work toward this goal. Is that present here? Absolutely. All you have is, it could be. No, let me be clear. Virginia's parole guidelines take age into account. It's within the scope of what's discussed in the parole guidelines, and the Supreme Court of Virginia gave an authoritative interpretation that the parole factors apply. So there's the age 60 question. Is age 60 life with parole? We say it is, but to your point, is there still room for hope? Absolutely, because the statistics show, and you can take judicial notice of the statistics table from Virginia Code 8.01-419, when Mr. LeBlanc turns age 60, he'll have an average life expectancy of 76.8 years. That's average expectancy. He could live till he's 90. That's a generation of time after he turns 60. There certainly is a meaningful life for him after he turns 60. The trial judge could have given him 40 years. He would then be 60 at the time he was sentenced. Here, he's got life with parole at age 60. That is not life without parole. He has every opportunity to behave himself in prison so he can qualify for release when he turns age 60. Let me ask you about your case. You might be able to read Graham, and cases after it, to conclude that there is a gate through which you have to go, which is a sentence of a juvenile without parole. For instance, they say, this court now holds that for a juvenile offender who did not commit homicide, the Eighth Amendment forbids the sentence of life without parole. The question is, is that a gateway? You have to have a juvenile who's sentenced to life without the possibility of parole. Then, of course, they explain exactly what Judge Wynn was asking about the criteria for parole and so forth. I'm wondering if there is parole in its normal standards as interpreted by the state. Is Graham to be read that it's now satisfied because it will never address a case where the system has the possibility of parole? I'm not quite sure I follow your Honor's question. It's sort of a categorical question. Is whether if a juvenile is sentenced under a system where there is parole for everybody, does Graham even apply? I would say it does not. Of course, under AEDPA, you can't even look at cases decided after the state court ruling here. Miller comes too late. Montgomery comes too late. Graham doesn't tell us what parole means. Certainly, if a state sentences a juvenile to life with parole, it doesn't violate Graham. Maybe there's an argument someday, as in the Hayden case, where the parole system is just a sham and people really aren't getting out. They're really getting out. I don't mean to throw them under the bus. The case is very distinguishable from our case because here, youth is taken into account. This prisoner will not be eligible for parole until he's 60, which is not until 2042, whereas Mr. Hayden was eligible in 2002 and claims that the system is letting him down. We're very different than that case. You mentioned that youth is taken into account. Was youth taken into account at the time of the original sentencing, or are you suggesting that it would be taken into account at the time that this particular inmate might be eligible for the geriatric release? It's both. I think it was taken into account in the pre-sentencing report that he had, but the trial judge gave him a life without parole sentence subject to geriatric release. But it will be taken into account in the parole review. We call it geriatric release, but it is a form of parole, and the parole regulations themselves define geriatric release as a form of parole. So to get back to the two questions that I think you need to answer, number one Standards for parole and geriatric release aren't exactly the same, are they? No, they're exactly the same, and that's because, number one, the geriatric release regulation provides that all of the procedures for parole apply. Number two, geriatric release is defined in the parole regulations as a form of parole. And number three, the Supreme Court of Virginia has now twice said that the same factors apply. So it is the same. So again, the first question is, is age 60 okay? And we say it is. It's certainly not objectively unreasonable to say that it's not. You don't have anything in Graham that could lead you to say that. The second question, then, is the factual question. Does Virginia's have a fair chance at release when you're eligible? I want to go back to my good friend Judge Niemeyer's question, which, as I understand, maybe it sounds like it was being asked, if the statute does not provide for life without parole, then anything else, if it does provide some type of opportunity and it's not life without parole, the question is, does Graham not apply? Because it's not life without parole. I think that's correct. And my question is, well, if it is not, if the statute doesn't say life without parole, but nonetheless, it does not provide a meaningful opportunity for a juvenile to obtain release based upon demonstrated maturity and rehabilitation, then the answer to your question must be the same, that that doesn't matter. Because you just said right then that if it doesn't say life without parole, even a system that does not allow that, still, you say Graham doesn't apply. Well, I think you'd have a claim that they say it's not, it's life with parole, but it's not. Am I correcting your assessment? Is that your statement? That Graham does not apply even then? Yeah. I don't want to get into semantics. It's not a semantics. I'm trying to answer. It's not a semantics. Judge Winn. It's a direct response to what I want to get from Judge Niemeyer's inquiry. And my point is... Because I think that's fundamental. If we have a per se rule, a black line where we draw, and if that statute doesn't say life without parole, and it provides something, an opportunity, it doesn't have to be meaningful, just an opportunity, then is that sufficient? It is... To not have Graham apply. I think if the prisoner says, look, they say it's life with parole, it's really not because I can't get out, then he would have a Graham claim. I think that would be cognizable under Graham. You've got to square that with the answer you just gave to Judge Niemeyer. I don't get it. Because there's an assumption that you have a right. Understand what we're saying. I want to make sure we're not drawing a bright line here. If the bright line is... Because we can make... It's nice to have law that's easy. It's nice to say, well, the statute didn't say life without parole, therefore Graham doesn't apply. And if that's your position, I need to know is that your position, or is your position such that that answer is not so easy for us because Graham did not define meaningful opportunity. And when we get into the definition of meaningful opportunity, these cases become complicated. We can't just say life without parole doesn't exist, is not part of the statute. Is that where you're going? I'm trying to be informed of your position on it. Our position is that if you have a system of life with parole, then Graham doesn't apply. But obviously, if it's not really life with parole because you can't get it, then you would have a Graham claim. And I hope that addresses the point. And no one can't get it, meaning you don't have a meaningful opportunity to be released based upon the maturity and rehabilitation that's been achieved. Yes. And I think it's helpful to go back to a question that Chief Justice Roberts asked at oral argument in Graham. He asked Graham's counsel, suppose a parole system allows only 1 in 20 prisoners to get out. Does that qualify? Does that satisfy the rule you're asking for? And he said yes. The statistics that were introduced in this case show more than 5 percent of the applicants for geriatric release getting out. And that's before you even consider that it's apples and oranges because they're not measuring, as Judge Wynn said earlier, people who are going to be eligible for release, they won't be eligible until 2038. But even if you just looked at the raw statistics, it wouldn't support LeBlanc's claim. The other point is that you've got to look at the facts through the deferential lens of AEDPA. And the State Court made a factual finding which is entitled to deference and implicit factual findings to fill any gaps that there may be. And I'd like to reserve the balance of my time for rebuttal. Thank you. We'll hear from Mr. Stephenson. Thank you, Judge. May it please the Court, my name is Brian Stephenson. I represent the AEDPA. Let me begin. I think the State tries very hard to recharacterize the issue in this case, but that's not consistent with the record. The State of Virginia has abolished parole. It is a statute. Someone convicted of the crime for which Mr. LeBlanc was convicted is not eligible for parole. There is no alternative parole. And I want to just emphasize this. The statute that talks about conditional release for geriatrics never uses the word parole to characterize that. That's point one. Point two. But it doesn't have to use the word parole. It may not have to, Your Honor. But I just think it's important because the State is arguing that there isn't life without parole in the State of Virginia. That's not what Angel says. What the Court in Angel says, and this is the last statement that the Court makes, we hold that the imposition of life without parole in this case is not cruel and unusual punishment prohibited by the Eighth Amendment to the United States Supreme Court pursuant to Graham. That's the judgment that the District Court said was unreasonable. The Supreme Court of the United States did not authorize State courts to do a case-by-case analysis and conclude that some life without parole sentences are constitutional. What the Supreme Court said It seems to me the only point there, the point there would be is that while this Court, the Federal Court does not have to defer to the Supreme Court of Virginia to interpret what the Eighth Amendment says for meaningful opportunity. That's exactly right. That is, if the Court doesn't, if the State of Virginia does not constitutionally distinguish between children and adults, which is what Graham requires. Graham says there is a constitutional difference when it comes to sentencing children and adults. And the question becomes, does that No, I didn't say that at all. It says a child sentenced, and you can see this in Miller and Montgomery, which followed Graham, a child sentenced to life without parole or sentenced to death is different. No other situation category. So you have to, to get in this gate, you have to talk about life without parole, just a minute. And then you get to exactly what the dialogue between Judge Wynn and the State was, what is the parole, genuinely a parole or is it a sham? You can challenge that, it seems to me. But I think if there is a normal parole system, the Supreme Court was focusing on the States set the mechanism and they used the word, the States have to make these decisions. So under that analysis, the threshold question would be, does Virginia impose life without parole? And I think under that point, the Supreme Court of the United States I quote the part in Angel, which is right before it, it says the regulations for conditional release under the statute, this is the geriatric statute, provide that if the prisoner meets the qualifications for consideration contained in the statute, the factors used, the normal parole consideration process applied to conditional release decisions under this statute. But it doesn't obviate the fact that we're talking about that because there is a life without parole sentence. And I just want to emphasize again, this Virginia Supreme Court in Angel never disputes that we have life without parole in Virginia. The United States Supreme Court acknowledged that Virginia was one of the seven States that impose life without parole. That's my threshold point, Judge Nehemiah. Then we get to the second question of whether there is a meaningful possibility of release, which is what Judge Winn was questioning Mr. Raphael about. I'm not sure I follow you in disposing of the first question. It seems to me that the Supreme Court of Virginia has said that this consideration at age 60 for someone who has a parole provision that satisfies Graham. That was their conclusion. Their conclusion is yes, that there is this meaningful possibility of release. I'm only making the point that there's nothing in Angel that would say we're not talking about life without parole sentences. That shifts then to the question of do we have a meaningful possibility of release. And I begin with the point that But you're not going to get to Judge Nehemiah's question until you deal with the question of whether this is parole. And this is clearly not parole. Parole is very different from You've got to have a whole different vote. You've got four out of five instead of three out of five. It's not parole. That's exactly right. If you walk down that path and start with the premise this is parole, then you're going to be right there with Judge Nehemiah. I agree with him on that. And that's my point, Judge Winn. This is not parole. And that's why I start by making the point there's nothing in that geriatric statute that refers to itself as parole. It is conditional release. And not only is it a different process, Judge Johnson, it's not the same. You have a much higher burden of proof. You've got to persuade four rather than three. It's not self-initiating like parole is. You have to apply for it. You have to show compelling reasons. You have to show compelling reasons. And the state is assuming that age is going to be a factor. But there's nothing in here that talks about that. The third thing is you don't get an interview, which is critical when you're talking about this. And most significantly, it does the opposite of giving special considerations for children. A 38-year-old defender committing the same crimes as the defendant here serves half the time as a juvenile. It turns Graham on its head. It's not treating juveniles more sympathetically. It's actually treating juveniles less sympathetically. That's why it doesn't become an adequate response to Graham. And just on this point of whether age was considered at sentencing, the trial judge here in the collateral said no. He said, basically, I don't have to give this defendant relief because he was 19 or 20 when I got to him, because there were accompanying felonies, because he had a bad attitude, and we have a sentencing report that he's a sociopath. Those are the reasons that the trial judge articulated for denying relief. All of those are prohibited by Graham. In Graham, there were accompanying felonies. In Graham, the defendant was older than 17 or 18 at the time of sentencing. In Graham, there was a bad when it created this categorical protection for juveniles. And that's why the district court found the trial judge's findings contrary to clearly established law. Similarly, the Virginia Supreme Court makes no findings in this case. They make no findings in Angel. They simply assert that geriatric release provides a remedy without ever acknowledging higher burden. You have to initiate it. You don't get the interview. You don't get the trial. That's what the district court again found contrary to clearly established law. If this state had presented a proceeding that said, oh, we're going to change the rules for juveniles. We're now going to mandate that they get X, whatever X is. We could be talking about whether X meets the constitutional requirements. But this was actually a preexisting release program that in no way acknowledges the differences between kids and adults. That's the command of Graham, that we recognize that there are these constitutionally significant distinctions between children and adults, yes, who are sentenced to life without parole, yes, who are denied a meaningful possibility of release. But there's nothing in Virginia that does that. We don't have a single provision, a single statute, a single rule. The trial judge does the opposite by saying, no, I'm going to condemn this child to life without parole because he was 19 when he gets to. Yes, if a state were to change its parole statutes and to say that no person convicted of a crime could receive parole before age 60. And at age 60, they can be considered parole if they've served 10 years. At age 65, they've served five years. And that was the statute. Would a juvenile sentence under that system be under Graham? Would a juvenile sentence under that system be? I think they would. I think they would, in part because that system would not. It says parole. We're going to provide parole, but we're never going to give parole before age 60. That's for everybody, juveniles and adults. So you have a state system that doesn't impose a sentence of life without parole. It imposes a sentence of life subject to parole at age 60. Life with parole. With parole at age 60. Yes. I actually think that would be outside the parameters of Graham, largely because I thought you'd say that. The question comes down to, in this case, whether the state acted unreasonably in concluding that its statute was a parole statute. Well, it's more than that, though, Judge, because it's not just that we have life with parole. We don't have life with parole. We have something that is conditional release. I'm a little dramatic, because at the same time they got rid of, they had the truth in sentencing. They put all this through. They put the geriatric provisions in there. And the arguments in the legislature was basically, we have people committing very serious crimes who within a few months, a few years, are getting out on parole. So they wanted truth in sentencing. And they put all this package together. And they explained that we want not to let people out who commit a very serious crime at least to age 60. But I think, Judge, I just think we're required to take the state law on its face. And what the state law says, what the Virginia legislature says, this is 53.1-165.1, any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense. It's not ambiguous. It's not equivocal. It is a direct end to parole. There is a separate provision. I want to also, I'm just thinking, because I think we're getting this business of whether this is parole or not. But the very, you call it a conditional release, the very reason for the geriatric program has nothing to do with parole. Absolutely. It was to keep old people from remaining in jail so that you won't have to give them treatment and take care of them after they've kind of reached this point of infirmity. Parole has a different informed purpose. Absolutely. Than what it is. And you can cabinet in and use that as the basis of it. But the end result is a release. Because we don't want to hold you anymore because you have gotten too old and you might need medical treatment. And so we'd rather let you go, which makes a lot of sense. Why would you keep someone who's in a wheelchair, who has cancer, who has some serious debilitating illness, and pay all the medical expenses in a prison system? And that's the purpose of geriatric release condition. It's not parole. Parole didn't matter if you were sick, ill, or whatever. That's right. Then you had a chance to get out based upon your rehabilitation and the fact that you now had demonstrated those factors that would allow it. That's right. And in fact, Judge Wynn, the form that the parole board uses has geriatric release with a line next to the word terminally ill. It was absolutely defined for that. And just for the point, Florida had a similar provision at the time that Graham was decided. And we have to be clear about this fact. The United States Supreme Court was given these arguments in Graham. They said we have clemency, we have these other release mechanisms. And what the Supreme Court said was that is insufficient to meet our constitutional concern that children be treated differently than adults. And I think you're absolutely right. If the state of Virginia builds a new facility for geriatric prisoners, to suggest that this provision would operate the same, I think is misguided. A healthy 65-year-old is actually going to be less favored in a geriatric release provision given the constraints that we have here. And the state of Virginia, the Virginia Supreme Court says, well, the factors are the same. But in the absence of some articulation of factors that creates that, which we don't have, they're absolutely not the same. The Virginia Supreme Court's ruling in that regard was an error, objectively unreasonable in my view. But you're absolutely right, Your Honor. The Virginia State Legislature said no more parole. We do want an escape mechanism. We have these prisoners that are old, expensive, geriatric prisoners who we've now concluded we can release without threats to public safety. There's nothing in this provision that says, oh, we'll give special consideration to juvenile offenders. And in fact, what the rules say is that we can deny it based on the offense alone, which is not consistent with parole. There are people getting parole in Virginia. For the people who were sentenced previously, you're parole eligible after 20 years. You get that interview. You don't have to apply it. It's actually administered by, it's a very different system. And that's the system that the state of Virginia, the legislature, on its own terms says we're eliminating. That's what made Virginia subject to the Graham rule. The Supreme Court recognized it was subject to that. These arguments about terminal illness and geriatric release were made in Florida. The Supreme Court rejected that. I have a question for you about the breadth of Graham vis-a-vis clearly established law under the EPA statute. Is it your position, what is your position with regard to whether or not Graham is limited to its holding or for purposes of clearly established law also includes the underpinning of it, including the discussion of penological purposes and the role that youth plays in sentencing practices? You understand my question? Yes, I do. And I think there's no question that the Supreme Court's ruling in Graham absolutely depends on its analysis that children are distinct from adults. They considered the neurological differences, the developmental differences that was baked into their conclusion that to condemn a child to die in prison, life imprisonment without parole, cannot be reconciled with the Eighth Amendment. So states are obligated to take all of that. They are obligated to have a process that recognizes these distinctions between children and adults. And that's what the district court found so objectionable, what happened here, because the trial judge, rather than doing that, reinforced his initial judgment that life without parole was appropriate for four reasons, because the defendant was at 19 when he came before him rather than 16, even though the crime was at 16, that he had a bad attitude, that there were accompanying felonies, and all of those were things that the Supreme Court addressed in Graham. So in that respect, the State of Virginia was obligated to do something responsive to this conclusion that children are less culpable than adults when it comes to these kinds of sentences and offenses. And Virginia hasn't done it. They have not in any way implemented the Supreme Court's mandate that children are constitutionally protected from certain kinds of sentences as distinct from adults. They are instead invoking a provision that doesn't make any distinction between children and adults, and if anything, treats children worse than adults, because it actually makes them serve more time before they are eligible for this kind of release. And that's the problem, Your Honor. It just doesn't respond to Graham. And that's what the district court found. It was rooted in an analysis that I don't think is terribly complicated when it comes to clearly established law. This is really well-settled law now. It's a flat ban on life without parole. We have a life without parole sentence. The State of Virginia has done nothing to create a process that distinguishes between children and adults. I also think it's significant, Your Honor, that if this argument having to wait, I mean, if the parameters themselves are unconstitutional, it would make no sense to impose this sentence on a juvenile who has to do twice as much time as the 38-year-old offender before they could then bring their claim. The Supreme Court actually mandated that these sentences be adjusted at sentencing. That's the mandate of Graham. And the State's position is that, no, we can continue to impose life without parole sentences on juveniles convicted of non-homicides. And then if they get to age 60 and don't think that the process works well enough, then they can complain. That can't be reconciled with Graham. That would not be an objective or reasonable interpretation of Graham. Graham had a clear objective. They wanted to end these kinds of life without parole sentences. The State of Virginia has not done that. And because of that, this does constitute an Eighth Amendment violation, which the District Court was proper to recognize. I should just note that virtually every other State in this similar situation has created mechanisms, has created reforms that are responsive to Graham. And in that regard, Virginia is an outlier. And this use of geriatric release, I want to make that point again, that it's not parole. It's not anywhere in that statute. The word parole is not described. Yes, the Parole Board manages it with a very different set of criteria. And I don't want to kind of understate the significance of a higher burden of proof, no interview. You have to initiate. But for this challenge in ANGEL, we wouldn't even have this assurance that they're so-called following the same procedures. I think all of that establishes that what the State is arguing here is insufficient to comply with the mandate created by Graham. And just on the deference, I just want to say the District Court's opinion kind of bent over backwards to kind of give Virginia all the deference that it was entitled to do. There's nothing in the trial court that the Court could point to that showed any willingness to comply with Graham. In fact, it's the opposite. There's nothing in the appellate court opinion. And Your Honor, there's nothing in ANGEL that would respond to the Supreme Court's mandate that there be a meaningful possibility of release. Under those circumstances, I think the District Court was absolutely correct to conclude that the State Court's adjudication of these issues was objectively unreasonable, did, was contrary to clearly established law in Graham v. Florida, and mandated relief. If there are no further questions, I appreciate the Court's time and attention. Thank you, Steve. Thank you. All right, Mr. Raffio. Virginia did not sentence LeBlanc to life without parole. The sentence, which is at page 111 of the Joint Appendix, was a sentence of life. The question is, does Virginia provide the equivalent of parole at age 60? And it does. The evidence that LeBlanc introduced in the State Court proved this. Number one, he introduced the regulations. This is page 288, which make clear that all the factors in the parole consideration shall apply in conditional release. But it's not parole. It is parole. Joint Appendix 3- I thought Virginia abolished this parole system. It abolished what had been the traditional parole system. It wasn't enacted to be parole. It was enacted to be a geriatric release program. It's called that. You're right. But I would take issue with saying it's not parole. It is. Why is it not what it's called? Why is it not a geriatric release condition program that was for the purpose so that you wouldn't have the terminally ill and those who were informed in a procedure? You're assuming that was the purpose, and that's not in the record. In fact, LeBlanc put into evidence the statement of Helen Fahey, who was on the parole board when they created geriatric release. They could have simply called it parole, but there was a reason they wanted a geriatric release program. It got rid of parole, says, hey, wait a minute. We don't want to have to keep people in forever because we have no weed to let them out. Right. But your assumption, Your Honor, is that it's limited to medical considerations, and that's just flatly untrue. It's all of the parole considerations. Oh, it's limited to old people. Once you hit 60, they figure you're kind of old. You could have started out being in prison at 50, and in 10 years, you didn't come out of this program. But if you came in at 15, it's going to be a long time before you get there, and how does that – I mean, I don't get it. You have a generation of time left. See, I think this goes back to my initial point, which is you've got to decide is what's the range of reasonableness, right? What did Fahey say the purpose was? Helen Fahey, this is page 344 of the Joint Appendix, she said geriatric release was created, quote, it was really focused on people who are going to get very long sentences at a young age so they would have some opportunity to be released. It's exactly the purpose of Graham. And age 60 is not too late. Age 70, you know, we might confess error at age 70. Age 60, absolutely not. Remind me who she is. She's a former federal prosecutor, she's a commonwealth attorney, and she was on the parole – In the legislature when this was done? She was on the parole board that created this – Was she the one that enacted this statute? No, she wasn't, but my point, Your Honor, is that they put this – What does it mean what she says the statute means? Because they put this evidence in, and under AEDPA, you're supposed to defer to the facts. How does it mean what she says it is? Well, Your Honor – If you gave me the Speaker of the House or the Governor or someone, that helps me. What does it mean for her to tell me that this is what this means? Well, it's evidence that shows what we think it means, and Your Honor wants to draw a different factual conclusion, but it's not in the record. It's not supported in the record. There's a factual conclusion than what? That geriatric release is only for medically infirm, and that's just not true. I didn't say it was only for that. I said it's not parole. If I can correct another misstatement by Mr. Stevenson, there is an interview. It's at page 288 of the Joint Appendix. The parole board has the ability to deny something at the outset, but once you apply and you're accepted, then there is an interview. But at the outset is when you don't get the interview. If you don't get the interview, you can't go in and talk about maturity and rehabilitation. So what good is it to give it after if you deny it? There's nothing in – It's not there. There's nothing in Graham that allows you to perform that kind of microsurgery on what constitutes valid parole or not. But there's something in Graham that says meaningful opportunity, and that meaningful opportunity has to be that you can demonstrate maturity and rehabilitation has been put in the process. And if you don't even have an interview, if you can't even talk, how in the world are you going to be able to do that? And you say, well, if you get beyond that stage, then you get it. But you've got to get beyond that stage. May I answer, Judge Wentz? Yes. Your Honor, you do get an interview. Excuse me. Look at me when you ask that. Yes, Your Honor. You do get an interview. The evidence that they put in showed that more than 5 percent of people who apply for geriatric release are getting it, which is above the number that Chief Justice Roberts mentioned at oral argument in Graham. But, of course, those statistics are misleading because many of those folks eligible for geriatric release are getting parole through the normal, traditional system. And not even the district court relied on any kind of statistical argument. So it was not unreasonable to pick age 60. And the facts show that the system is working. And if it's not, they can bring a claim at the appropriate time. And for those reasons, the court should reverse. All right. Thank you, Mr. Director. All right. We'll come down and greet counsel, then proceed on to the second case.
judges: Paul V. Niemeyer, James A. Wynn Jr., Thomas E. Johnston